IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DONA DEVITE, P.A.,                          :
doing business as International              :
Business & Realty Group,                     :
                                             :
           Plaintiff,                        :    CIVIL ACTION NO.
                                             :    1:05-CV-0251-JOF
      v.                                     :
                                             :
GOLD RUSH II, INC., doing business as        :
Vegas Nights, et al.,                        :
                                             :
           Defendants.                       :

## OPINION AND ORDER

This matter is before the court on Plaintiff's motion for default judgment against Patrick Olmstead [17-1]; Plaintiff's motion to strike answer of Patrick Olmstead [26-1]; Plaintiff's motion for leave to file amended complaint to add Kimberly Olmstead as defendant [28-1]; Plaintiff's motion to compel [39-1]; Cary Stephen Wiggins' motion to withdraw as counsel [40-1]; and Plaintiff's motion for summary judgment [45-1].

Plaintiff, Dona DeVite, filed suit against Defendants, Gold Rush II, d/b/a Vegas Nights, Mukesh Shretta, World Class Entertainment, Inc., and Patrick Olmstead, raising claims of breach of contract, procuring cause, quantum meruit, tortious interference with contractual relations, and fraud and deceit. Plaintiff is a real estate agent who was engaged by Mukesh

Shretta to procure a buyer for his Vegas Nights club business and property. Plaintiff contends that she introduced Patrick Olmstead to the listing, but a sale was not immediately consummated. Later, without informing Plaintiff, Mr. Shretta and Mr. Olmstead reached an agreement on the purchase of the property and business. As a result, Plaintiff contends that Mr. Shretta owes her a commission on the sale and that Gold Rush II and Patrick Olmstead tortiously interfered with her contractual relations with the sellers by negotiating a deal without her knowledge in an attempt to avoid paying her a commission.

Service of Process/Default

Plaintiff proffered evidence that Patrick Olmstead was served on April 2, 2005. A process server, Hollis Hill, signed an affidavit stating that on "April 2, 2005, at 9:46 a.m. he[] served Patrick Olmstead by personally serving Kimberly Olmstead, Wife/Co-resident located at 605 Meuse Way, Alpharetta, GA 30022." Patrick Olmstead did not answer Plaintiff's complaint within twenty days of April 2, 2005, and on May 11, 2005, Plaintiff filed a motion for entry of default. Patrick Olmstead responded to the motion for entry of default but also answered the complaint on May 17, 2005.

In his response to Plaintiff's motion for default, Defendant Olmstead provides the affidavit of Kimberly Olmstead, his wife. She testifies that on April 2, 2005, she left the house before 9:00 a.m. and was not served with any papers by Mr. Hill for the remainder of the day. She did not return home until after 6:00 p.m. The Olmsteads' nanny/housekeeper also provided affidavit testimony that she was at the residence all day and was not served with

2

any papers. In reply, Mr. Hill provided an additional affidavit stating he had the Olmsteads' residence under surveillance for several weeks in an attempt to serve process. Beginning at 7:46 a.m. on April 2, 2005, he surveilled the property for two hours and then noticed a black female leaving the front door. From his previous attempts, he knew this individual not to be the housekeeper. He approached the black female and asked her if she was Kimberly Olmstead. The individual refused to answer. Mr. Hill then served her with the complaint and other papers. Mr. Hill estimates that the individual was approximately 30+ years old, 5'4" tall and 140 lbs. with black hair. He also stated that there was a white Nissan Pathfinder in the driveway.

Plaintiff moves for entry of default contending that Defendant's answer is untimely. Entry of default judgment, however, is a "drastic remedy" that should be used "sparingly." Furthermore, there is a general preference that cases be heard on their merits rather than "resorting" to sanctions. *Mitchell v. Brown & Williamson Tobacco Co.*, 294 F.3d 1309, 1316 (11th Cir. 2002); *see also Mason & Hanger-Silas Mason Co. v. Metal Trades of Amarillo*, 726 F.2d 166, 168 (5th Cir. 1984) (not abuse of discretion to deny entry of default where no evidence that plaintiff was prejudiced by late answer).

Here, there is a factual dispute as to when Defendant Olmstead was served. Even assuming, however, that Defendant Olmstead was served on April 2, 2005, his answer was delayed for only a short period of time. Because the court finds that Defendant Olmstead's answer was not so late as to prejudice the proceedings here, the court DENIES Plaintiff's

AO 72A
(Rev.8/82)

motion for entry of default and DENIES Plaintiff's motion to strike Defendant Olmstead's answer. Because default was never entered against Defendant Olmstead, the court declines Plaintiff's invitation to impose the cost of service as a condition for setting aside default.

Motion to Withdraw as Counsel

On July 26, 2005, attorney Cary S. Wiggins filed a motion to withdraw as counsel asserting that Defendants have failed to pay his legal fees and have failed to aid in their defense. Cary S. Wiggins has complied with Local Rule 83.1 in providing notice to Defendants. For good cause shown, the court GRANTS the motion to withdraw as counsel.

Motion to Amend Complaint

Plaintiff filed a motion to amend her complaint to add Kimberly Olmstead as a defendant. Plaintiff avers that Ms. Olmstead owns 49% of Gold Rush II and thus was involved in the purchase of the Vegas Nights property and business. In her proposed amended complaint, Plaintiff raises claims of procuring cause, quantum meruit, tortious interference with contractual relations, and fraud and deceit against Ms. Olmstead.

Ms. Olmstead responds that it would be futile to allow Plaintiff to amend her complaint because she cannot sustain a cause of action of tortious interference against Kimberly Olmstead as Olmstead was not a "stranger" to the contract. Ms. Olmstead also contends that the "procuring cause" doctrine does not apply to a relationship governed by an express contract. She further avers that Plaintiff's complaint of quantum meruit is insufficient with respect to her because Plaintiff has not pleaded that Ms. Olmstead acted as the "alter ego" of

4

Vegas Nights. Finally, Ms. Olmstead contends that Plaintiff's allegations of fraud do not meet the requirements of Federal Rule of Civil Procedure 9(b).

Generally, leave to amend shall be "freely given when justice so requires." *See* Fed. R. Civ. P. 15(a). A district court need not, however, allow a party to amend its complaint "(1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Ms. Olmstead is correct that in Georgia, to establish a claim of tortious interference with contractual relations, a plaintiff must show "the existence of a valid contract and that the defendant acted intentionally, without privilege or legal justification, to induce another not to enter into or continue a business relationship with the plaintiff, thereby causing the plaintiff financial injury." *Atlanta Market Center Management Co. v. McLane*, 269 Ga. 604, 608 (1998). A plaintiff must also show that the defendant is a "stranger" to the "contract at issue and the business relationship giving rise to and underpinning the contract." *See id.* at 610. In *LaSonde v. Chase Mortgage Co.*, 259 Ga. App. 772 (2003), a buyer filed suit against a seller and a mortgage company alleging that the mortgage company interfered with the buyer's contractual relationship with the seller to purchase his house. *Id.* at 772. The Court of Appeals reiterated the teachings of *Atlanta Market* and further stated that "[o]ne is not a

5

stranger to the contract just because he is not a party to the contract." *Id.* at 773. "A person with a direct economic interest in the contract is not a stranger to the contract." *Id.* The court found the mortgage company was not a stranger to the purchase contract because it had a direct economic interest in the property that was the subject of the contract. *Id.* at 774. Under the facts set forth in Plaintiff's complaint, it is clear that the Olmsteads had an interest in the Vegas Nights business and property – the subject of the contract. Thus, Plaintiff cannot sustain a claim of tortious interference with contractual relations against Ms. Olmstead, and it would be futile to add Ms. Olmstead as a Defendant with respect to this claim.

Ms. Olmstead is also correct that under Georgia law, where parties have contracted for a real estate listing, the common law cause of action of "procuring cause" is not applicable because the express agreement controls the parties' relationship. *See*, *e.g.*, *B & R Realty, Inc. v. Carroll*, 245 Ga. App. 44, 45 (2000) (plaintiff, unable to establish breach of listing contract, could not turn to common law procuring cause doctrine); *O'Brien's Irish Pub v. Gerlew Holdings*, 175 Ga. App. 162 (1985) (where express contract governs conditions under which commission is to be paid, common law "procuring cause" doctrine does not apply). Similarly, under Georgia law, "there can be no recovery in quantum meruit where an express contract governs all the claimed rights and responsibilities of the parties." *Lord Jeff Knitting Co. v. Lacy*, 195 Ga. App. 287, 288 (1990); *see also Thomas McDonald & Co. v. Elliott*, 92 Ga. App. 409, 410 (1955) ("Where there is a special contract between the parties, a recovery on quantum meruit cannot be had.").

6

Plaintiff avers in her complaint that Defendant Shretta, individually on behalf of himself and as owner of Vegas Nights, executed a commission sales agreement with Plaintiff on July 14, 2003. Cmplt., ¶¶ 10-12. However, there is no allegation in the complaint that Plaintiff had any contractual relationship with the Olmsteads or Gold Rush II, Inc. Rather, Plaintiff avers that through a posting she placed on a website, she was contacted by Patrick Olmstead, who expressed an interest in closing a possible sale. *Id.*, ¶¶ 13-14. Plaintiff facilitated negotiations between the Olmsteads and Mr. Shretta. *Id.*, ¶ 15. At this time, the record does not contain a copy of the contract signed by Plaintiff and Mr. Shretta so that the court cannot determine whether the contract would govern the conduct of the purchaser in any way. As such, based on the information before it, the court rejects Defendants' argument that the contract Plaintiff signed with Mr. Shretta bars Plaintiff's "procuring cause" and quantum meruit claims against Kimberly Olmstead, and the court grants Plaintiff's motion to amend complaint with respect to these causes of action.

Finally, Ms. Olmstead contends that Plaintiff has not satisfied the requirements of Federal Rule of Civil Procedure 9(b) regarding the particularity with which allegations of fraud must be pled. Rule 9(b) provides that, in all averments of fraud, "the circumstances constituting fraud or mistake shall be stated with particularity." This rule exists not only to alert defendants to the specific misconduct with which they are charged, but also to protect defendants "against spurious charges of immoral and fraudulent behavior." *Ziemba v. Cascade Intern., Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (internal quotes omitted). The

7

Eleventh Circuit has held that Rule 9(b) may be satisfied in one of two ways. First, the rule is satisfied "if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each statement and the person responsible for making it (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled plaintiff, and (4) what defendants obtained as a consequence of the fraud." *Id.* (internal citations and quotes omitted). Rule 9(b) may also be satisfied through "alternative means" which are not directly applicable here. *United States ex rel. Clausen v. Laboratory Corp.*, 290 F.3d 1301, 1310 n.18 (11th Cir. 2002). Failure to comply with the requirements of Rule 9(b) is grounds for dismissal. *Clausen*, 290 F.3d at 1310.

Here, Plaintiff alleges in her complaint that based on her efforts to begin negotiations for the purchase of the business and property, Patrick Olmstead deposited $20,000 in an escrow account on September 12, 2003. Cmpt., ¶ 16. Mr. Olmstead agreed that if a deal were not signed by November 7, 2003, the escrow account could be disbursed to Mr. Shretta. *Id.*, ¶ 17. The escrow was disbursed on November 8, 2003. *Id.*, ¶ 18. Plaintiff contends that at the same time Defendants let the original deal fall through, they were procuring financing through a deal with Point Center Financial, Inc. *Id.*, ¶ 19. In July 2004, Defendants consummated a sale of the Vegas Nights business and property based on the Point Center financing. *Id.*, ¶ 20. Under the fraud and deceit count, Plaintiff avers that Defendants made misrepresentations to her including "that negotiations terminated among them regarding the

8

sale of Vegas Nights, when they knew such representations were false, and when they knew they had no intention of paying Plaintiff's sales commissions, as agreed to in the Contract." *Id.*, ¶ 39. "Defendants concealed the communications between and among themselves regarding their intent to consummate the Closing in an alternative manner after they received as much valuable information and service from Plaintiff with respect to a sale." *Id.*, ¶ 40. Under the requirements of Rule 9(b), the court finds that Plaintiff's fraud and deceit allegations are sufficient for Defendants to understand the wrongdoing contended by Plaintiff. As such, the court grants Plaintiff leave to amend her complaint to add this count against Kimberly Olmstead.

In sum, the court GRANTS IN PART AND DENIES IN PART Plaintiff's motion to amend complaint.

Motion to Compel and for Summary Judgment

Plaintiff filed a motion for summary judgment on August 30, 2005, contending that in the course of discovery, Defendants admitted liability. Plaintiff contends that she served discovery requests on Defendants on June 3, 2005. Defendants did not respond to these requests, and Plaintiff filed a motion to compel on July 25, 2005, seeking responses and attorney's fees pursuant to Federal Rule of Civil Procedure 37. Plaintiff also served requests for admission on July 25, 2005. Defendants did not respond to these requests, and Plaintiff, therefore, asserts that all statements should be deemed admitted. It is on the basis of one of

9

these purportedly admitted statements (Number 63: "You proximately caused damage to Plaintiff in the amount of $500,000") that Plaintiff seeks to prevail on summary judgment.

Defendants did not respond to Plaintiff's motion to compel with respect to the June 3, 2005 discovery requests. For good cause shown, therefore, the court GRANTS Plaintiff's motion to compel. Defendants are DIRECTED to respond to the June 3, 2005 discovery requests within twenty (20) days from the date of this order. Plaintiff is DIRECTED to file a motion for attorney's fees within twenty (20) days from the date of this order. That motion should comply with the requirements set forth in *Norman v. Housing Authority*, 836 F.2d 1292 (11th Cir. 1988), and *ACLU v. Barnes*, 168 F.3d 423, 430 (11th Cir. 1999).

With respect to the July 25, 2005 requests for admission, Defendants aver that they responded to those requests in a timely fashion by placing them in the mail on August 29, 2005. Defendants' counsel and paralegal provided affidavit testimony stating that they placed the responses in a mailbox on August 29, 2005, although Defendants agree the envelope was not postmarked until August 30, 2005.

No party disputes that the service of discovery responses is governed by Federal Rule of Civil Procedure 5. Further, "[s]ervice by mail is complete upon mailing." *Id.*, 5(b); *see also Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1263 n.25 (11th Cir. 1997). Counsel for Defendants testified that he prepared the responses on August 29, 2005, and his paralegal dropped them in the mail that day. Plaintiff argues that defense counsel's testimony must be false because the envelope is postmarked August 30, 2005.

Defendants are correct that Rule 5(b) refers to "mailing" and not "postmark," *see Larez v. Holcomb*, 16 F.3d 1513, 1515 n.1 (9th Cir. 1994), and thus, counsel's undisputed testimony that he placed the response in the mail on August 29 should be sufficient regardless of the date postmarked on the envelope. In any event, even if the response to the requests for admission was placed in the mail one day late, the court finds that the sanction of default judgment – which essentially is what Plaintiff seeks in her motion for summary judgment – would not be warranted. Accordingly, the court DENIES Plaintiff's motion for summary judgment.

Conclusion

The court DENIES Plaintiff's motion for default judgment against Patrick Olmstead [17-1]; DENIES Plaintiff's motion to strike answer of Patrick Olmstead [26-1]; GRANTS IN PART AND DENIES IN PART Plaintiff's motion for leave to file amended complaint to add Kimberly Olmstead as defendant [28-1]; GRANTS Plaintiff's motion to compel [39-1]; GRANTS Cary Stephen Wiggins' motion to withdraw as counsel [40-1]; and DENIES Plaintiff's motion for summary judgment [45-1].

The Clerk of the Court is DIRECTED to file Plaintiff's amended complaint as of the date of this order.

Defendants are DIRECTED to respond to the June 3, 2005 discovery requests within twenty (20) days from the date of this order. Plaintiff is DIRECTED to file a motion for

11

attorney's fees with respect to its motion to compel within twenty (20) days from the date of this order.

**IT IS SO ORDERED** this 7th day of December 2005.

                                                  s/ J. Owen Forrester
                                                  J. OWEN FORRESTER
                                        SENIOR UNITED STATES DISTRICT JUDGE